2026 Tex. Bus. 42



## The Business Court of Texas, Fourth Division

| | | |
|---|---|---|
| ABIGAIL G. KAMPMANN, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF PRINCIPLE AUTO GROUP, LLC, PRINCIPLE AUTO MANAGEMENT, LTD, PRINCIPLE MISSISSIPPI, LTD., MLSAGKARC PROPERTIES, LTD., and PRINCIPLE AUTO MISSISSIPPI, LLC, | § § § § § § § § § § § | |
| *Plaintiffs*, | § § § | Cause No. 26-BC04A-0005 |
| v. | § § | |
| MARK L. SMITH, | § § § | |
| *Defendant*. | § § § | |

## OPINION & ORDER

### *Syllabus**

*This case presents several issues: (i) whether this court has subject-matter jurisdiction over this action; if so, (ii) whether an earlier filed lawsuit between some of the same parties*

---

\* NOTE: The syllabus was created by court staff and is provided for the convenience of the reader. It is not part of the Court's opinion, does not constitute the Court's official description or statement, and should not be relied upon as legal authority.

*requires abatement of this action under the doctrine of dominant jurisdiction, and (iii) whether, at this court's discretion, the case should be transferred to a different county.*

**OPINION**

¶1  Before the court is (1) Defendant Mark L. Smith's Plea to the Jurisdiction challenging the court's authority to hear this case, (2) Plaintiffs' Response in Opposition to Defendant's Plea to the Jurisdiction, (3) Defendant Mark L. Smith's Reply to Plea to the Jurisdiction, (4) Defendant Mark L. Smith's Verified Plea in Abatement, or Alternatively, Motion to Transfer, (5) Plaintiffs' Response to Defendant's Verified Plea in Abatement, or Alternatively, Motion to Transfer, and (6) Defendant Mark L. Smith's Reply to Verified Plea in Abatement, or Alternatively, Motion to Transfer.  The court held a hearing on the matter on June 4, 2026.  After considering the Parties' arguments, the court denies Defendant's requests for the reasons set out below.

**BACKGROUND**

¶2  This case arises out of the breakdown of a decade-long business partnership between Plaintiff Abigail G. Kampmann ("Kampmann") and Defendant Mark L. Smith ("Smith")[1]. In 2014, Kampmann and Smith formed Principle Auto Group, LLC ("PAG

---

[1] The Parties' business partnership breakdown has generated litigation in several other forums. First, on August 1, 2024, Smith sued Kampmann in the 342nd Judicial District Court of Tarrant County for breach of fiduciary duty and breach of contract (the "Original Lawsuit"). Second, on October 8, 2025, Bavarian Imports, Ltd. (an entity owned by Kampmann) sued Smith in Kendall County over Smith's alleged interference with shared-services employees (the "Bavarian Suit"). Third, on December 2, 2025, the Tarrant County court presiding over the Original Lawsuit severed Smith's claims for declaratory judgment and injunctive relief and transferred those claims to Kendall County (the "Severed Suit," and together with the Bavarian Suit, the "Kendall County Suits").

The Original Lawsuit was tried in 2026 by a jury, and a verdict was returned in Smith's favor. However, no final judgment has been entered in that case.

GP")[2]. PAG GP is a Texas manager-managed limited liability company, which serves as the sole general partner of Principle Auto Management, Ltd. ("PAM LP"). PAM LP is a Texas limited partnership which, Plaintiffs allege, was formed with the specific purpose of managing certain automobile dealerships[3]. Both entities, PAG GP and PAM LP, maintain their registered office and principal place of business in Bexar County.

¶3    Kampmann filed this action in the Business Court on April 3, 2026. The Original Petition pleads four counts. In Count One, Kampmann seeks declarations that (i) it is impossible and/or impractical for both PAG GP and PAM LP to continue with their respective businesses, (ii) under the PAG GP Company Agreement and PAM LP Limited Partnership Agreement, an event of termination has occurred, and as a result the entities must be wound up and dissolved, and (iii) that Smith's February 5, 2026 MS Offer[4] does not comply with the requirements of the MS DS Limited Partnership Agreement and MS RE Limited Partnership Agreement. Count Two alleges that Smith breached the MS GP

---

[2] Kampmann holds a 50.5% interest in PAG GP, and Smith holds a 49.5% interest in the same entity; both Kampmann and Smith are co-managers of PAG GP.

[3] Kampmann holds a 69.95% interest in PAM LP, Smith holds a 29.95% in the same entity, and PAG GP holds a 0.1% interest as a general partner in PAM LP.

[4] Principle Auto Mississippi, LLC ("MS GP") is a Texas limited liability company with its principal place of business in Bexar County. Principle Mississippi, LTD ("MS DS LP") is a Texas limited partnership with its principal place of business in Bexar County. MLSAGKARC Properties, LTD ("MS RE LP") is a Texas limited partnership with its principal place of business in Bexar County.

Kampmann, Smith, and a third partner, Carvara LLC ("Carvara"), are joint owners of MS GP, MS DS LP, and MS RE LP (collectively, the "MS Entities").

The partnership agreements relevant to what Plaintiff Kampmann seeks in Count One are (i) the First Amended and Restated Limited Partnership Agreement of Principle Mississippi, Ltd., dated May 30, 2016 (the "MS DS Limited Partnership Agreement"), and (ii) the Agreement of Limited Partnership of MLSAGKARC Properties, Ltd., dated July 1, 2017 (the "MS RE LP Agreement").

On February 5, 2026, Smith issued a purchase offer to buy out Kampmann's interest in the MS Entities (the "MS Offer"). The purchase offer was made under Section 9.8 of the MS DS Limited Partnership Agreement and Section 9.8 of the MS RE Limited Partnership Agreement and required a response from Kampmann within 60 days.

Company Agreement[5] by failing to comply with the terms required by the agreement when exercising an option to purchase. Count Three alleges that Smith, as the sole manager of MS GP, breached fiduciary duties owed to the other MS Entities and their members. Count Four seeks a court-ordered winding-up and termination of the entities, PAG GP and PAM LP, under Sections 11.314 and 11.054 of the Texas Business Organizations Code.

¶4     Smith does not challenge Count Four. In his Plea to the Jurisdiction, Smith moves to dismiss Count One in part, Count Two, and Count Three for want of a case or controversy. In his Plea in Abatement, Smith moves to abate or transfer the entire case in deference to the Kendall County Suits.

ANALYSIS

## A. Plea to the Jurisdiction

¶5     Smith first challenges this court's power to decide this case through a plea to the jurisdiction. This court's jurisdiction is governed by Section 25A.004(b) of the Texas Government Code. *See* TEX. GOV'T CODE § 25A.004(d). In addition to the Texas Government Code, the legal principles governing pleas to the jurisdiction are well established in Texas. As the Texas Supreme Court has stated:

> A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. The claims may form the context in which a dilatory plea is raised, but the plea should be decided without delving into the merits of the case. The purpose of a dilatory plea is not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached.

---

[5] MS GP is the General Partner of and controls MS DS LP and MS RE LP.

*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)); *see also Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

¶6    "A plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts or both." *Martens v. Lamkin Land & Cattle Co., LLC*, 2025 Tex. Bus. 32, ¶24, 720 S.W.3d 716, 721 (8th Div. 2025) (citing *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018)). A plea to the jurisdiction is "not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached." *Bland*, 34 S.W.3d at 554. A plaintiff cannot be "required to put on their case simply to establish jurisdiction." *Id.*

¶7    In *Pradera*, this court upheld these well-established principles by reiterating that absent a sham pleading, the allegations in the plaintiff's petition control the jurisdictional analysis. *Pradera SFR, LLC v. Am. Housing Ventures, LLC*, 2026 Tex. Bus. 25, ¶22, 2026 WL 1326748, at *4 (4th Div. 2026).

¶8    Smith's plea to the jurisdiction rests on the premise that because Plaintiffs' petition does not quantify damages or identify "a single dollar of loss," Plaintiffs have not adequately pled a case or controversy. This court is of the opinion that the premise confuses two different issues: (1) whether Plaintiffs can ultimately prove damages, and the dollar amount of those potential damages, which is a merits question, and (2) whether Plaintiffs have alleged a concrete, particularized injury traceable to Defendant's conduct, which is, in this case, the jurisdictional question. *See Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154–55 (Tex. 2012).

¶9     This distinction is important because a plaintiff's "allegation of damages in excess of jurisdictional limits suffices to show the amount in controversy, even if damages cannot ultimately be proved at all." *Bland*, 34 SW.3d at 554. Here, Plaintiffs pled an amount in controversy exceeding the Texas Business Court's $5 million jurisdictional threshold. Because Smith did not contend the figure is a sham or submit evidence showing the amount in controversy does not meet the jurisdictional threshold, this Court declines to look beyond the amount in controversy pled. *See Id.*; *see also ET Gathering & Processing LLC v. Tellurian Prod. LLC*, 2025 Tex. Bus. 11, ¶¶ 8–9, 709 S.W.3d 1, 4–5 (11th Div. 2025) (denying a plea to the jurisdiction where movant produced no evidence showing that the pleaded amount was a sham). This court's jurisdiction under Texas Government Code § 25A.004(b) is therefore satisfied.

¶10     With that framing in place, each challenged count survives the jurisdictional requirement to allege an injury.

¶11     As stated earlier, in Count One, Kampmann seeks a declaratory judgment. Under Texas law, a declaratory judgment requires, "a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute," that is a justiciable controversy that the declarations sought will resolve. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (quoting *Bexar–Medina–Atascosa Counties Water Control & Improvement Dist. No. 1 v. Medina Lake Protection Ass'n*, 640 S.W.2d 778, 779–80 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.)).

¶12     Smith argues in his plea to the jurisdiction that no controversy exists as to the MS Offer because Kampmann expressly declined the offer, no transaction was closed,

no rights were forfeited regarding the matter, no money exchanged hands, and "that is the end of that." The court disagrees. As the petition alleges, the MS Offer was made under Section 9.8 of both the MS DS Limited Partnership Agreement and the MS RE Limited Partnership Agreement. Under these sections of the agreements, an Offeree's failure to respond to the Offeror's written notice of Offer is "conclusively . . . an election to sell"; therefore, under the agreements, Kampmann could not simply ignore the MS Offer[6].

¶13 Kampmann's April 4, 2026, express rejection of the MS Offer is not the controversy in this case, but rather it is the Parties' competing construction of the terms the MS Offer was made under. *See Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678 (Tex. 2020) (holding a dispute over the scope of easements was justiciable and constituted a live controversy due to "divergent interpretations" of the instrument.)

¶14 The Plaintiffs' pleadings present a disagreement over whether the MS Offer complied (i) with Section 9.5 of the MS GP Company Agreement, (ii) with Sections 9.8 of the MS DS Limited Partnership Agreement and MS RE Limited Partnership Agreement, and (iii) with Sections 7.2 of the MS DS Limited Partnership Agreement and MS RE Limited Partnership Agreement. Smith argues, as an affirmative defense in his original answer, that he "complied with the MS GP Company Agreement's buy-sell provision." His reading of the agreement is clearly a divergent interpretation of the agreement's terms. Additionally,

---

[6] Section 9.8.1 of the MS DS Limited Partnership Agreement and Section 9.8.1 of the MS RE Limited Partnership Agreement are identical and read, in part, "[w]ithin sixty (60) days after receipt by the Offeree of the Offeror's written notice of Offer, the Offeree shall send to the Offeror a written notice stating whether the Offeree elects to sell . . . If the Offeree shall fail to notify the Offeror whether it or they elect to sell . . . such a failure shall be conclusively deemed an election to sell all of the Offeree's Ownership Interest to the Offeror."

as raised at the June 4, 2026, hearing, Section 9.8.3 of the agreements omits a verb, leaving unclear whether a rejection makes liquidation of the partnerships mandatory or optional. A declaration construing those provisions would settle the Parties' present rights and "terminate the controversy." *Bonham*, 907 S.W.2d at 468.

¶15    That a declaratory action under the Uniform Declaratory Judgment Act (UDJA) is "often brought with an eye to future harm" does not make it unripe. *Lynch*, 595 S.W.3d at 685. Therefore, as to Count One, the Parties' competing construction of the terms present a justiciable controversy in this case.

¶16    As for Counts Two and Three, in which Kampmann alleges breach of contract due to Smith's breach of the MS GP Company Agreement, standing requires that a plaintiff be personally injured by a "concrete and particularized" injury that is "actual or imminent, not hypothetical." *Heckman*, 369 S.W.3d at 155 (quoting *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008)).

¶17    The Plaintiffs' petition alleges, in part, (i) that the MS Offer deprived Kampmann of her contractual right to receive a corresponding option to sell her interest in MS GP at the net book value, (ii) that Smith's undisclosed Side Deal with Carvana deprived Plaintiffs of the benefit of the contractual offer process and protections set out in Sections 7.2 and 9.8 of the MS DS Limited Partnership Agreement and MS RE Limited Partnership Agreement, (iii) that Smith's unilateral appointment of a "Platform Manager" at a separate dealership diverted personnel from the Toyota Hernando dealership of its General Manager and created cross-entity liability exposure for MS DS LP, and (iv) that Smith's allocation of approximately $200,000 in personal legal fees to three dealerships, including Toyota

Hernando, required the entities' accountant to expend resources correcting the charges and deprived the entities of the use of those funds for a period of time.

¶18     In his plea to the jurisdiction, Smith argues that as for the appointment of the Platform Manager, the petition only alleges a potential risk and further erosion of trust. The court is of the opinion that the petition alleges more than that, including exposure to cross-entity liability. As for the legal-fee charges, Smith states that because the accountant found the error and reversed it, "[w]here the alleged harm has already been remedied, no live controversy remains for this Court to address."

¶19     However, the petition alleges that after the accountant reversed the charges and recorded a receivable due from Smith, he contested the reclassification of the charges and, through his attorney, asserted that he had the authority to expense the charges as the sole manager of MS GP. It is therefore unclear whether the dispute remains unresolved and whether the accountant's reversal of the charges fully redressed the alleged injury. Whatever the case, it is the existence of the injury, not proof of its magnitude, that is required to establish jurisdiction. *See Heckman*, 369 S.W.3d at 155.

¶20     The above are concrete and particularized injuries alleged by the Plaintiffs that are traceable to the Defendant's conduct. Whether these alleged injuries ripen into recoverable damages is a merits question. *Bland*, 34 S.W.3d at 554 (noting "[a] plea to the jurisdiction cannot be used to require the plaintiff to prove the damages to which he is entitled in order to show that they exceed the court's jurisdictional limits.").

¶21     In this case, even if the challenged counts suffered a pleading deficiency, the remedy sought by Smith would not be available under Texas law. Dismissal without leave

to amend the pleadings is a remedy available only when the pleadings affirmatively negate jurisdiction. *See Miranda*, 133 S.W.3d at 227 (citing *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). Here, Smith does not contend that Plaintiffs would never plead a viable cause of action; rather, he challenges the sufficiency of Plaintiffs' allegations as to damages. It is well established that this would be a curable defect for which Texas's fair notice standard guarantees an opportunity to amend before an adverse judgment. *See Sw. Airlines Pilots Ass'n v. Boeing Co.*, 2026 Tex. Bus. 37, ¶5, 2026 WL 1685916, at *1 (1st Div. 2026) (noting "Texas litigants . . . must generally be allowed to replead a deficient claim before suffering an adverse judgment"). Here, no repleading is necessary. Defendant's plea to the jurisdiction is denied.[7]

## B. Plea in Abatement

¶22    A plea in abatement points the court to the dominant-jurisdiction question. That is whether two courts have concurrent jurisdiction over "inherently intertwined issues." *Martens v. Lamkin Land & Cattle Co.,* 2025 Tex. Bus. 32, ¶ 27, 720 S.W.3d 716, 721 (8th Div. 2025) (quoting *In re Puig*, 351 S.W.3d 301, 305 (Tex. 2011)). The threshold question is "whether there is an inherent interrelation between the subject matter of the two pending lawsuits that triggers the dominant-jurisdiction question." *In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 292 (Tex. 2016). If there is no such interrelationship, both suits may proceed. *Id.* If there is, the court in which suit is first filed ordinarily acquires

---

[7] Smith's plea to the jurisdiction refers in passing to Rule 91a as an alternative basis for dismissal. The court does not treat this plea to the jurisdiction as a Rule 91a motion, as it does not engage the Rule 91a standard, nor does it identify the challenged causes of action as having no basis in law or fact.

dominant jurisdiction, and the later suit must be abated unless an exception applies. *Id.* at 294–98.

¶23 Defendant's plea in abatement fails for two reasons. First, the lawsuits are not inherently interrelated. Second, the Kendall County district court could not acquire dominant jurisdiction over the claims that are at the heart of this case.

¶24 Smith's strongest argument in his verified plea in abatement that the present case and the Kendall County Suits are inherently interrelated points to the overlap between Count One's request for a declaration that the Corporate Opportunity provision is unenforceable and that PAG GP and PAM LP must be dissolved, and the Severed Suit's effort to enforce the same Corporate Opportunity provision. The court examined this closely. However, "not all related cases are inherently interrelated," *Martens*, 2025 Tex. Bus. 32, ¶ 43.

¶25 At the center of this action is the dissolution and winding up of PAG GP and PAM LP. At the center of the Kendall County Suits is something else entirely. The Bavarian Suit does not involve the MS entities at all; rather, it primarily concerns the interference with the entity's shared-services employees. The Severed Suit primarily concerns Kampmann's alleged formation of a competing business and diversion of opportunities and assets.

¶26 The logical-relationship test asks whether the same facts are significant in both lawsuits. A lawsuit that turns on the employee interference (the Bavarian Suit) and competitive diversion (the Severed Suit) does not arise from the same facts as a suit that turns on the MS Offer, the Side Deal, the Platform Manager appointment, the legal-fee

allocation, and most importantly, the statutory predicates for dissolving two Bexar County entities for several reasons.

¶27    First, the MS Offer itself postdates the Tarrant County jury verdict and was not a part of an earlier pleading. Second, the dissolution claim and other claims related to the MS Entities do not arise from the transaction or occurrence underlying the Kendall County Suits. Third, as will be discussed in more detail below, Count Four's dissolution claim could not have been brought as a counterclaim in the Kendall County Suits because those lawsuits are in a court that lacks the authority to grant those dissolution claims.

¶28    The differences in parties, rights, alleged wrongs, and requested relief mirror those that defeated the dominant jurisdiction in *Martens*. In that case, as in this case, the same facts were not "significant and logically relevant to both claims." *Martens*, 2025 TEX. Bus. 32, ¶50.

¶29    There is a second independent reason that Smith's plea in abatement fails. Section 11.314 of the Texas Business Organizations Code provides that, "[a] district court in the county in which the registered office or principal place of business in this state of a domestic partnership or limited liability company is located has jurisdiction to order the winding up and termination" of that entity. PAG GP and PAM LP maintain their registered offices and principal places of business in Bexar County. The court with power to wind up the entities is therefore a Bexar County district court – or this court, exercising concurrent jurisdiction over actions arising out of the Texas Business Organizations Code. *See* TEX. GOV'T CODE § 25A.004(b)(7); TEX. BUS. ORGS. CODE § 11.314.

¶30    The same conclusion follows from the preclusion inquiry that the Texas Supreme Court used in *Dolenz* and that this court applied in *Martens*. Abatement serves no purpose where "a judgment in the first suit would *not* foreclose all issues between [the parties]." *Martens*, 2025 Tex. Bus. 32, ¶51 (discussing *Dolenz v. Cont'l Nat'l Bank of Fort Worth*, 620 S.W.2d 572 (Tex. 1981)). In the present case, however the Kendall County suits are resolved, this court must still decide whether PAG GP and PAM LP should be wound up and terminated under Section 11.314 of the Texas Business Organizations Code.

¶31    Smith further argues that even if abatement is not mandatory in this case, the court should abate as a matter of discretion for reasons of comity, convenience, and orderly procedure.

¶32    The Legislature conferred original jurisdiction on this court over the claims Plaintiffs assert in this case, and did not grant the court authority to decline that original subject-matter jurisdiction. *Chaudhry v. Stillwater Capital Investments, LLC*, 2025 Tex. Bus. 31, ¶94, 721 S.W.3d 230, 246 (1st Div. 2025). As *Chaundry* explained, although the Government Code gives the court discretion to decline supplemental jurisdiction over related claims, "it granted no such authority regarding causes of action within in its original jurisdiction." *Id.* Therefore, "the Legislature impliedly denied the court that power." *Id.* (citing *City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011).

¶33    It is the opinion of this court that the Texas Government Code contemplates that the Business Court will continue to exercise jurisdiction over claims within its original jurisdiction, even when related claims proceed elsewhere. *Id.* That principle carries particular weight where, as in this case, the claims fall within the court's original

jurisdiction under Section 25A.004(b) and the relief for the dissolution claims lies squarely within the jurisdiction of a Bexar County court.

¶34 As for Smith's comity argument, he contends in his reply to his verified plea in abatement that dissolving PAG GP and PAM LP will essentially extinguish the claims he is pursuing against Kampmann in the other ongoing lawsuits and may result in conflicting judgments. The court disagrees, because a terminated entity continues to exist for the purposes of prosecuting and defending pending litigation. See TEX. BUS. ORGS. CODE § 11.052. Discretionary abatement is unwarranted in this case.

## C. Alternative Motion to Transfer

¶35 In the alternative to abatement, Smith moves to transfer this action to Kendall County under Civil Practice & Remedies Code §15.002(b), which permits a discretionary transfer "[f]or the convenience of the parties and witnesses and in the interest of justice" from one county of proper venue to another.

¶36 This alternative motion fails primarily because §15.002(b) only authorizes transfers "from a county of proper venue" to "any other county of proper venue." In this case, Kendall County is not a proper venue for the termination claims. As addressed above, §11.314 of the Texas Business Organizations Code authorizes the winding up of PAG GP and PAM LP in Bexar County, the county of their registered office. The statute does not authorize transfer to Kendall County because Kendall County is not a proper venue for all of Plaintiffs' claims.

# CONCLUSION

¶37 Accordingly, having considered the pleas and motions, any responses, replies, and arguments of counsel, the court holds that Plaintiffs have invoked the court's subject-matter jurisdiction and therefore denies Defendant's plea to the jurisdiction. Additionally, the court finds that the Kendall County Suits are not inherently interrelated with this action and that the Kendall County district court could not be vested with dominant jurisdiction over the present claims and therefore denies Defendant's plea in abatement. Lastly, the court holds that Defendant Smith has shown no basis to transfer the action and therefore Defendant's alternative motion to transfer is denied.

It is therefore **ORDERED** that:

1. Defendant Mark L. Smith's Plea to the Jurisdiction is **DENIED** as to Count One (in part), Count Two, and Count Three.
2. Defendant Mark L. Smith's Verified Plea in Abatement is **DENIED**.
3. Defendant Mark L. Smith's alternative Motion to Transfer is **DENIED**.

In all other respects not expressly granted, the requested relief is **DENIED**. This case will proceed on the court's docket.

**SO ORDERED.**

MARIALYN BARNARD
Judge of the Texas Business Court,
Fourth Division

SIGNED ON: July 8, 2026

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 117078622
Filing Code Description: No Fee Documents
Filing Description: Opinion & Order
Status as of 7/8/2026 2:27 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Julia Mann | | jmann@jw.com | 7/8/2026 1:16:45 PM | SENT |
| Stephen Calhoun | | scalhoun@jw.com | 7/8/2026 1:16:45 PM | SENT |
| David Evans | 24032163 | david@dmeacl.com | 7/8/2026 1:16:45 PM | SENT |
| Kenneth Meixelsperger | 24031596 | kmeixelsperger@bellnunnally.com | 7/8/2026 1:16:45 PM | SENT |
| NeKeita Summerville | | nsummerville@bellnunnally.com | 7/8/2026 1:16:45 PM | SENT |
| Carey Edwards | | cledwards@jw.com | 7/8/2026 1:16:45 PM | SENT |
| Dyana Mardon | | dmardon@jw.com | 7/8/2026 1:16:45 PM | SENT |
| Brittany Longoria | | bklongoria@jw.com | 7/8/2026 1:16:45 PM | SENT |
| Naomie Kweyu | | NKweyu@bellnunnally.com | 7/8/2026 1:16:45 PM | SENT |
| Mary Smith | | msmith@bellnunnally.com | 7/8/2026 1:16:45 PM | SENT |
| John Guild | | jguild@bellnunnally.com | 7/8/2026 1:16:45 PM | SENT |
| Greg Nieman | | gnieman@bellnunnally.com | 7/8/2026 1:16:45 PM | SENT |
| Erica Hyman | | ehyman@bellnunnally.com | 7/8/2026 1:16:45 PM | SENT |
| Tatum Gonzales | | tgonzales@bellnunnally.com | 7/8/2026 1:16:45 PM | SENT |